```
 1                   UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
 2                    Civil Action No. 08-09-198

 3      _____

 4       In Regard to the Matter of:

 5       Bayside State Prison                OPINION/REPORT
         Litigation                             OF THE
 6                                          SPECIAL MASTER
         NORMAN FAULKNER
 7       a/k/a OMAR FAULKNER

 8                 -vs-

 9       WILLIAM H. FAUVER, et al,

10               Defendants.

11      _____

12

13

14
                          *     *     *     *
15
                   FRIDAY, JANUARY 23, 2009
16
                          *     *     *     *
17

18

19

20
        BEFORE THE HONORABLE JOHN W. BISSELL, SPECIAL MASTER
21

22

23

24

25
```

```
 1
 2
 3
 4
                Transcript of proceedings in the above
 5   matter taken by Theresa O. Mastroianni, Certified
 6   Court Reporter, license number 30X100085700, and
 7   Notary Public of the State of New Jersey at the
 8   United States District Court House, One Gerry Plaza,
 9   Camden, New Jersey, 08102, commencing at 12:45 PM.
10
11
12
13
14
15
16
17
18                MASTROIANNI & FORMAROLI, INC.
19            Certified Court Reporting & Videoconferencing
20                    251 South White Horse Pike
21                    Audubon, New Jersey 08106
22                          856-546-1100
23
24
25
```

```
 1
 2   A P P E A R A N C E S:
 3
 4       ROSELLI & GRIEGEL, PC
         BY:  MARK ROSELLI, ESQUIRE
 5            - and -
         BY:  JAMES LAZZARO ESQUIRE
 6       1337 STATE HIGHWAY 33
         HAMILTON SQUARE, NEW JERSEY  08690
 7       609-586-2257
         ATTORNEYS FOR THE DEFENDANTS
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1           JUDGE BISSELL:  Now reopening
2  proceedings in the case of Omar, formally known as
3  Norman, Faulkner, docket number 09-198.
4           This opinion/report is being issued
5  pursuant to the directives of the Order of Reference
6  to a Special Master and the Special Master's
7  Agreement and the guiding principles of law which
8  underlie this decision to be applied to the facts
9  upon which it is based as set forth in the jury
10 instructions in the Walker and Mejias jury charges to
11 the extent applicable to the allegations of Mr.
12 Faulkner.
13          As finalized after review under Local
14 Civil Rule 52.1, this transcript will constitute the
15 written report required under paragraph seven of the
16 Order of Reference to a Special Master.
17          Mr. Faulkner was in Number Three
18 Trailer at the time of Officer Baker's murder.
19 Evacuations from that trailer to the gym occurred on
20 August 2nd, 1997.  He alleges various incidents of
21 assaults upon him, which I'll discuss a little
22 further in a few minutes, but he never reported to
23 anyone at Bayside Prison whether medical personnel,
24 psychological personnel, administrative personnel,
25 ombudsmen or anyone else about these incidents.

1 Furthermore, his testimony contains several
2 inaccuracies and, indeed, incredible recountings.
3           He says that Officer Veach was the
4 housing officer who came to his area of Trailer
5 Number Three and ordered him to evacuate that trailer
6 for purposes of the search.  Officer Veach testified
7 here and contemporaneous evidence reveals that he was
8 on duty in B Unit that day where Mr. Faulkner,
9 interestingly enough, was transferred at a later time
10 on that day.  He was not in Trailer Number Three and,
11 furthermore, as with other Bayside officers, played
12 no role in the extractions of the prisoners from
13 their housing areas for the purpose of those areas
14 being searched.
15           Mr. Faulkner further alleges that upon
16 his movement to the gym from Trailer Number Three,
17 Officer Jones snatched him out of the line on that
18 walk to the gym, took him on a detour, as I recall,
19 behind Trailer Number One, and then proceeded to
20 commit an assault upon him, which I'll once again
21 talk about a little bit further.
22           However, Officer Jones was on duty in
23 the tents that day.  A regular first shift officer,
24 he testified and the documents confirm that even his
25 second shift or overtime shift schedule indicates

1   that he would have been doing escorts in the tent
2   area or with tent inmates.  Furthermore, he had
3   absolutely no recollection of and testified, in fact,
4   that he was not in the area of the trailers on this
5   occasion.
6              Mr. Faulkner proceeded to describe
7   Officer Jones, a description which in general (at
8   least as to his height) fit the Officer Jones who
9   came in here to testify and refute this testimony of
10  Mr. Faulkner.
11             And for the record, that's Hans Jones,
12  Junior.  Mr. Jones also testified that there were a
13  couple of other officers named Jones in the Bayside
14  Prison Officer Corps at that time, but it was quite
15  clear from their description and the descriptions of
16  their duties by him that neither of them was the
17  alleged perpetrator of these events.
18             To move chronologically through the
19  events in question, and I'm not going to describe
20  them in any detail, Mr. Faulkner first testified that
21  he was bumped into a wall intentionally by one of the
22  officers upon his departure from Trailer Number
23  Three, but while still inside that unit.
24  Cross-examination revealed that his body didn't
25  travel more than a quarter of an inch.  Furthermore,

1  no allegations of any injury resulting from that
2  incident are recorded, and neither individually nor
3  cumulatively does that support a claim here for the
4  use of excessive force and the infliction of cruel
5  and unusual punishment.
6              Mr. Faulkner described his encounter
7  with Officer Jones at length appearing at pages 123
8  through 128 of the transcript of January 21st, 2009.
9  Once again, I'm not going to recite that in whole or
10 in part here, but merely reiterate that those
11 supposed events were well-refuted by Officer Jones
12 who, as he indicated, was not even there at the time.
13 Mr. Faulkner has not sustained his burden of proof
14 with regard to that alleged incident.
15             Mr. Faulkner also recounted an incident
16 in the gym where he was asked to stand up and to give
17 his name.  He said that he couldn't stand because his
18 legs had been in such a position on the gym floor for
19 so long that he just wasn't able to do so.  Once
20 again, he indicates that he was pushed to the cage in
21 the back of the gym and alleges he was punched.
22 However, he also testified here that he had given his
23 name, but at a subsequent hearing on Court Line, at
24 least as summarized by the hearing officer in the
25 Exhibit P-165, he said that he was too scared to

```
 1   respond and to give his name.  So we have here a
 2   situation in which Mr. Faulkner, asked to do some
 3   very legitimate things, if you will, by the officers
 4   on duty in the gym, did not.  As a result of his
 5   behavior in the gym and the failure to follow the
 6   orders given to him, he was at that point transferred
 7   to B Unit.  He states that on his arrival in B Unit
 8   Officer Snell was on duty there and, in fact,
 9   witnessed what happened to him.  The evidence,
10   however, subsequently from this hearing indicates
11   that Officer Snell was not on duty in that unit and,
12   in fact, as I mentioned before, it was Officer Veach
13   who was there.
14              Mr. Faulkner testified that he was
15   thrown to the floor in B Unit injuring his knee and
16   testified that at a later date at the conclusion of
17   the Court Line Hearing he was subjected to crude
18   sexual simulations by the officer walking behind him
19   as he was moved from Court Line back to his cell and
20   that he was also threatened with stabbing to either
21   his eye or his neck by someone wielding a pen.
22   Frankly, the credibility and accuracy of these
23   alleged events are severely compromised by the
24   inaccuracies regarding the presence of Messrs. Veach
25   and Snell in areas where they weren't by the
```

1  inconsistent testimony he gave as to whether he did
2  or did not give his name in the gym and by the
3  fabrication of the supposed assault by Officer Jones
4  at the start of his movement to the gym.
5  Parenthetically, once again, on that latter event,
6  one must be reminded that the SOG officers handled
7  the movement of prisoners from their units to the
8  gym.  And the thought that those men in the course of
9  their duties would allow some BSP officer to appear
10 and extract someone from the line, subject him to
11 assaults at a nearby area and then return him to the
12 line is just not credible.
13             Accordingly, the testimony of Mr.
14 Faulkner is so laced with inaccuracies, fabrications
15 and other incredible testimony that it cannot be said
16 that he has come even close to sustaining his burden
17 of proof by a preponderance of the evidence of the
18 alleged actions inflicted upon him.
19             Finally, although not every item of
20 evidence has been discussed in this opinion/report,
21 all evidence presented to the Special Master was
22 reviewed and considered.  For the reasons set forth
23 above I recommend in this report that the district
24 court enter an order and judgment of no cause for
25 action with regard to Norman Omar Faulkner.

```
 1                    C E R T I F I C A T E

 2

 3        I, Theresa O. Mastroianni, a Notary Public and

 4   Certified Shorthand Reporter of the State of New

 5   Jersey, do hereby certify that the foregoing is a

 6   true and accurate transcript of the testimony as

 7   taken stenographically by and before me at the time,

 8   place, and on the date hereinbefore set forth.

 9        I DO FURTHER CERTIFY that I am neither a

10   relative nor employee nor attorney nor counsel of any

11   of the parties to this action, and that I am neither

12   a relative nor employee of such attorney or counsel,

13   and that I am not financially interested in the

14   action.

15

16

17

18

19        /s/ Theresa O. Mastroianni
          Theresa O. Mastroianni, C.S.R.
20        Notary Public, State of New Jersey
          My Commission Expires May 5, 2010
21        Certificate No. XI0857
          Date: February 10, 2009
22

23

24

25
```